IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| KEVIN RAY and YVETTE MARIE, ) | |
| ASBURY ) | Case No. 08-21989 |
| Debtors. ) | Chapter 7 |
| _____ ) | |
| ) | |
| THE CALLAWAY BANK, ) | Adversary No. 09-02012 |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| KEVIN RAY and YVETTE MARIE, ) | |
| ASBURY ) | |
| Defendants. ) | |
| ) | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This adversary comes before the Court on the motion for summary judgment filed by the plaintiff The Callaway Bank ("Plaintiff" or "Callaway") against Kevin Asbury ("Kevin") and Yvette Asbury ("Yvette") or collectively ("Debtors"). Callaway seeks judgment as a matter of law upon each of the claims for relief and causes of action asserted against Kevin and Yvette in its Complaint. This is a core proceeding under 28 U.S.C. §157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that Callaway is entitled to a judgment as a matter of law against Kevin. Callaway is not entitled to a judgment as a matter of law against Yvette as there remain genuine issues of material fact with regard to her.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2008, Debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Prior to filing for relief, Kevin was in the business of buying and selling cattle. There is a question of fact regarding whether Yvette was also in the cattle business or whether she was merely helping her husband with his business. Debtors borrowed money from Callaway to finance the business.[1] Debtors executed certain loan documents which granted Callaway a security interest in all of Debtors' livestock, equipment and certain real property. At issue in the adversary proceeding is Loan No. 17492651, on which the sum of $3,071,599.88 remains due and owing to Callaway.

In an effort to obtain additional financing, Kevin prepared and presented Callaway with a "borrowing base certificate" which stated that Debtors owned 4,667 head of cattle as of May 30, 2007.[2] This is the document upon which Callaway relied in continuing to make advances of money to Debtors.

Kevin admitted at his 2004 examination that the most cattle he ever owned was "probably 2000" in the year 2008.[3] One of Kevin's farm hands, Larry Vukadin, testified that Debtors did not have 4,667 head of cattle as of the date of the "borrowing base certificate" and that the number of cattle they owned on all of their farms was likely far less than that, perhaps around 1,000.[4] As of the Petition Date, Debtors owned no cattle.

---

[1] Debtors executed a Combined Promissory Note and Security Agreement for the principal amount of $4,000,000.00 (Loan No. 17492651). Plaintiff's Exhibit 1.

[2] Plaintiff's Exhibit 7.

[3] Statement of Uncontroverted Fact, ¶ 40.

[4] Statement of Uncontroverted Fact, ¶ 45.

At his 2004 examination, Kevin testified that someone took all of his business records sometime after October 31, 2008.[5] Kevin testified that the boxes of business records that were taken were the only records that he had which would indicate how many cattle he and Yvette had at any point in time during his borrowing relationship with Callaway. Kevin took the Fifth Amendment when asked where all of the cattle had gone.[6] He said that he had "several hundred head of cattle" in his possession as of October 1, 2008, but that he did not really know what happened to them.[7] He did say that to his knowledge, none of the cattle had been stolen and that the only cattle that had been sold were those needed for expenses.[8]

Callaway filed this adversary for a declaration that Debtors' debts owed to it be declared nondischargeable pursuant to §§ 523(a)(2)(B), 523(a)(4), and 523(a)(6). Callaway filed a motion for summary judgment and memorandum in support thereof, which included a statement of uncontroverted facts, seeking summary judgment against both Kevin and Yvette. Kevin failed to file a response to Callaway's motion; therefore, under LR 9013-1(H)(2), the facts are deemed admitted as to him. Although Yvette filed a response to Callaway's motion, because she offered no evidence beyond the pleadings, by affidavit or otherwise, to show the existence of a genuine issue of fact, and because she failed to specifically deny each of Callaway's uncontroverted facts, the Court finds that her response failed to comply with LR 9013-1(H)(2), and that the facts are deemed admitted as to her as well.

---

[5] Plaintiff's Exhibit 13.

[6] Plaintiff's Exhibit 11.

[7] Plaintiff's Exhibit 13.

[8] Plaintiff's Exhibit 13.

## II. LEGAL ANALYSIS

### A. Standard for Summary Judgment

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A 'genuine issue' in the context of a motion for summary judgment is not simply a 'metaphysical doubt as to the material facts'." *Id*. Rather, "a genuine issue exists when the evidence is such that a reasonable fact finder could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir.1994). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi Le-isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

**B. Summary Judgment is Proper as to Kevin Asbury Under 11 U.S.C. § 523(a)(2)(B)**

A discharge under 11 U.S.C. § 727 does not discharge an individual debtor for any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... use of a statement in writing that is materially false, respecting the debtor's or insider's financial condition, on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied, and that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). To prevail on summary judgment in this case, Callaway's statement of uncontroverted facts must establish that (1) Kevin made (2) a statement in writing (3) respecting his financial condition (4) that was materially false (5) that was made with the intent to deceive Callaway and (6) on which Callaway reasonably relied. *See Heritage Bank of St. Joseph v. Bohr (In re Bohr)*, 271 B.R. 162, 166 (Bankr. W.D. Mo. 2001). Kevin presented Callaway with a "borrowing base certificate" which represented that Debtors owned 4,667 head of cattle as of May 20, 2007.[9] The "borrowing base certificate" was made by Kevin, is a statement in writing regarding Debtors' financial condition, and was used to obtain money, property and/or the extension, renewal or refinancing of credit from Callaway; therefore, the Court finds that the first three elements of § 523(a)(2)(B) are satisfied.

The evidence establishes that the "borrowing base certificate" contained false information in that Debtors did not own 4,667 head of cattle. Debtor admitted that the most head of cattle he ever owned was in 2008 and was probably 2000. Another witness testified that although the Debtors owned or rented over 2,000 acres of farmland, they never had access to sufficient pasture

---

[9] Statement of Uncontroverted Facts, ¶37.

to support a cattle herd of even half that number;[10] and that they never owned the massive amounts of fodder, in the form of hay, that would be required to support such a herd during the winter season.[11] "A financial statement is materially false if it 'paints a substantially untruthful picture of a financial condition by a misrepresentation of the type which would normally affect the decision to grant credit'." *Bohr,* 271 B.R. at 167 *citing Meyer v. Dygert (In re Dygert)*, 2000 WL 630833, *5 (Bankr. D. Minn.). The Court finds that the evidence establishes that the "borrowing base certificate" contained "materially false" financial information in that it dramatically inflated the number of cattle allegedly owned by Debtors.

The Court finds that the evidence supports a finding that Kevin intentionally inflated the number of cattle in his inventory by over 2,000, at a minimum, for the sole purpose of inducing Callaway to extend additional credit. "An intent to deceive does not mean that the Debtors acted with a malignant heart." *Agribank v. Webb (In re Webb)*, 256 B.R. 292, 297 (Bankr. E.D. Ark. 2000). "Knowledge of the falsity of the information or reckless disregard for the truth satisfies the intent element of §523(a)(2)(B)." *Id*. Kevin admitted that the most head of cattle he had ever owned was "probably 2000" which is far fewer than the number he indicated in the "borrowing base certificate;" therefore, the Court is satisfied that he intended to deceive Callaway.

The last element is whether Callaway's reliance on the certificate was reasonable. The Eighth Circuit in *First National Bank of Olathe, Kan. v. Pontow*, 111 F.3d 604 (8th Cir. 1997), set forth factors that courts may consider in the analysis of whether a lender acted reasonably or had a duty to investigate. The first factor is whether any "red flags" were present that would have

---

[10] Statement of Uncontroverted Facts, ¶¶42 and 43.

[11] *Id*.

alerted an ordinarily prudent lender to the possibility of a problem with a borrower's financial statements. *Pontow,* 111 F.3d at 610. Another factor is whether minimal investigation would have revealed the false representations. *Id.* No "red flags" are identified by Debtors or otherwise suggested by the evidence to raise the issue of whether Callaway could have determined that the "borrowing base certificate" was false had it engaged in some minimal investigation; therefore, there is no evidence for the Court to consider which would suggest that Callaway did not reasonably rely on the certificate given to it by Kevin. The Court finds that Callaway's reliance in this case was reasonable. The Court, finding no genuine issues of material fact, finds that summary judgment is proper and that Kevin's debt to Callaway is nondischargeable under §523(a)(2)(B). Having found the debt nondischargeable on summary judgment under §523(a)(2)(B), the Court declines to analyze whether summary judgment is also proper under either §§ 523(a)(4) or 523(a)(6).

### C. Summary Judgment is Not Proper as to Yvette Asbury

Callaway argues that it is entitled to summary judgement against Yvette, solely on a theory of vicarious liability, because her response to its motion and memorandum failed to satisfy the requirements set forth in LR 9013-1(H)(2) and; therefore, the alleged uncontroverted facts as set forth in its motion are deemed admitted as to her as well. Although the Court agrees with Callaway with regard to the failure of Yvette's response to comply with the local rule, the fact that the Court finds the facts deemed admitted as to Yvette does not mean that summary judgment is proper as to her. There remain genuine issues of material fact regarding: (1) whether Yvette was Kevin's business partner or merely "helping out" as Kevin's spouse, and (2) whether Yvette knew or should have known that the "borrowing base certificate" that Kevin provided to

Callaway was materially false as contemplated under §523(a)(2). In this Court's judgment, while uncontroverted, the evidence offered by Callaway in support of these propositions does not establish them.

The United States Supreme Court has recognized that a debt may be nondischargeable when the debtor personally commits fraud or when actual fraud is imputed to the debtor under agency principles. *Strang v. Bradner*, 114 U.S. 555, 561, 5 S.Ct. 1038, 1885, 29 L.Ed. 248 (1885). A partner's liability under §523(a)(2) may be imputed to an agent or partner even in the absence of evidence that the agent or partner knowingly participated in the fraud. *Treadwell v. Glenstone Lodge (In re Treadwell)*, 423 B.R. 309, 316 (BAP 8th Cir. 2010). As Callaway notes in its Memorandum, "[i]t is highly unusual to hold a debt non-dischargeable under §523(a)(2) where the debtor is only vicariously liable and has not participated in the fraud." *Treadwell*, 423 B.R at 316. "A marital relationship is insufficient to establish a partnership or agency in order to hold a debtor liable for his spouse's fraud for nondischargeability purposes rather, there must be an agency or partnership." *Treadwell*, 423 B.R. at 318 *citing Allison v. Roberts (In re Allison)*, 960 F.2d 481, 485-86 (5th Cir. 1992). Many court have been reluctant to impute intent from one spouse to the other so as to prevent discharge of the innocent spouse's debt. *See e.g. Agribank, FCB v. Gordon,* 2002 WL 32155708 (M.D. Ga.); *O'Donnel v. Floyd (In re Floyd)*, 177 B.R. 985, 987-88 (Bankr. M.D. Fla. 1995) (finding that a husband's fraud would not be imputed to his wife in the absence of specific proof of an agency relationship); *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 127 B.R. 175, 184 (Bankr. M.D. Tenn. 1991) (noting that the authorities cited by debtor in opposition to imputing fraud involved spouses, and thus were not decided with regard to agency principles); *First Sec. Bank v. Steinman (In re Steinman)*, 61 B.R. 368, 374

(Bankr. W.D. Mo. 1986) (holding that the evidence was insufficient to show that wife appointed husband as her agent where, although wife knew husband would be making representations to the bank, she did not assent to the specific misrepresentations or give her husband general authority to act for her in signing the financial statement).

In this case, the evidence before the Court of a partnership between Kevin and Yvette is that: they each executed the promissory note and security agreement for the $4,000,000.00 loan;[12] Yvette had the authority to write checks on the account opened by Kevin and Yvette at Callaway, which is the same account into which Callaway disbursed funds loaned to Debtors for the cattle business; and Yvette wrote checks on the account for the business and for personal matters.[13] Each of these facts could be explained either by her status as Kevin's spouse or as an employee of the business. In *Sunkyoung Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 (8th Cir. 1987), a case cited by Callaway, the husband was in the livestock business and there was a question as to whether the wife was in the business as well. The issue before the Eighth Circuit in *Sunkyoung* was whether there was sufficient evidence of a partnership between the husband and wife to withstand a motion for judgment notwithstanding the verdict. In its opinion, the *Sunkyoung* Court acknowledged the definition of a partnership that has been adopted by Missouri law,[14] and noted additional principles that Missouri courts have used in determining whether a partnership exists such as: whether the partners entered into an agreement, although this may be

---

[12] Statement of Untroverted Facts, ¶12.

[13] Statement of Uncontroverted Facts, ¶27.

[14] The Uniform Partnership Law, adopted in Missouri, defines partnership as "an association of two or more persons to carry on as co-owners of a business for profit." Mo. Rev. Stat. § 358.060.1 (1978).

implied;[15] the intention of the parties;[16] the fact that merely "helping out" in a business is not in itself sufficient to prove the existence of a partnership;[17] and that sharing in the profits raises a presumption that a partnership exists.[18] The *Sunkyoung* Court considered the evidence regarding the wife's involvement in the cattle business, including: checks written on the business account for personal use; a Dun & Bradstreet report stating that she assisted in the management of the business; the wife's self characterization as the business's secretary; and evidence that she benefitted personally from the profits of the business.[19] *Sunkyoung*, 828 F.2d at 1249. In denying the JNOV, the *Sunkyoung* Court found that there was enough evidence to create an issue of material fact for a jury to determine whether the wife was a partner of the business or was merely "helping out" her husband in his business. *Id*.

Callaway's use of *Sunkyoung*, as support for its contention that the evidence in this case, presumably like the evidence in *Sunkyoung*, supports a finding that she and Kevin were partners, is misplaced in that the case does not stand for the proposition that the evidence before the Court in that case was sufficient for a finding that the spouses were partners. Rather, the issue there was whether there was sufficient evidence to submit to the jury the question of the wife's liability on a

---

[15] *Brotherton v. Kissinger*, 550 S.W.2d 904, 907 (Mo. Ct. App. 1977).

[16] *Grissum v. Reesman*, 505 S.W.2d 81, 85 (Mo. 1974).

[17] *Brotherton*, 550 S.W. 2d at 907; *see also e.g. Shawneetown Feed & Seed Co. v. Ford*, 468 S.W.2d 54, 56 (Mo. Ct. App. 1971) ("This is particularly true in husband and wife cases, because the very nature of the relationship of the parties tends to submerge adversity of individual interests."); *Fish v. Fish*, 307 S.W.2d 46, 52 (Mo. Ct. App. 1957)("acts and circumstances between spouses may not have the same significance *** as the same acts and circumstances between strangers might have").

[18] *Grissum*, 505 S.W.2d at 85; *Brotherton*, 550 S.W.2d at 907.

10

partnership theory. *Sunkyoung*, 828 F.2d at 1249-50.  It is true, that in both *Sunkyoung* and in this case there is evidence of a partnership; however, as in *Sunkyoung,* the ultimate determination of whether the evidence before the Court is sufficient for a finding that a partnership existed is a question of fact.

Callaway also cites *In re Reuter*, 427 B.R. 727 (Bankr. W.D. Mo. 2010) as support for its argument that in both that case and in this case there is "ample evidence to support" a finding that Kevine and Yvette "conducted themselves as though they were partners."  *Reuter* is factually inapposite.  First and foremost, the alleged partners in *Reuter* were not spouses, therefore, the analysis was at arms length and clearly different than this case where spouses are involved.  In *Reuter,* there actually was ample evidence of the existence of a partnership including: testimony from one of the partners identifying the relationship as a partnership; a prior pleading identifying the relationship as a partnership; testimony from the COO identifying the relationship as a partnership; and evidence of an intent to combine money and experience to generate a profit.  *Reuter,* 427 B.R. at 758.  The evidence of a partnership between the spouses/Debtors in this case does not qualify as "ample" and, even under the *Sunkyoung* case cited by Callaway, the Court finds that a genuine issue of material fact remains regarding whether Kevin and Yvette were partners or whether Yvette was merely "helping out" Kevin in the family business.

Once it is determined that a partnership exists, under *Walker v. Citizens State Bank of Maryville, Missouri (In re Walker)*, 726 F.2d 452, 454 (8th Cir. 1984), it must be established that the principal either knew or should have known of the agent's fraud.  "Proof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should

have known of the fraud." *Walker*, 726 F.2d at 454. "If the debtor was recklessly indifferent to the acts of his agent, then the fraud may also be attributable to the debtor-principal." *Id*. There is no evidence in the uncontroverted facts that Yvette knew or should have known that Kevin was intentionally providing Callaway with a materially false financial picture. There is a genuine issue of material fact regarding whether Yvette knew or should have known that they did not own the number of cattle that the "borrowing base certificate" stated that they did, or that the number of acres that they owned could not have sustained the number of cattle that the certificate stated that they owned. Because Yvette could only be held liable on a vicarious liability theory, Callaway must present facts which establish that she knew or should have known that her partner/husband was engaged in fraudulent activity. The facts submitted, even though uncontroverted, simply do not address these issues and, therefore, do not warrant making any such findings.

### D. Joint and Several Liability for Actual Damages

Callaway has requested that the Court enter a money judgment against Kevin and Yvette, jointly and severally, in the amount of $3,071,599.88. This Court has previously held that Bankruptcy Courts have jurisdiction to enter a money judgment on claims for nondischargeable debts. *In re Asbury*, 408 B.R. 817, 823 (Bankr. W.D. Mo. 2009). Neither party has contested this request. Kevin and Yvette executed the Promissory Note and Security Agreement in favor of Callaway in the principal amount of $4,000,000.00. After application of all credits to which Debtors are entitled, the sum of $3,071,599.88[20] remains due and owing. The Court finds that Callaway shall have a judgment against Kevin and Yvette, jointly and severally, in this amount.

---

[20]Statement of Uncontroverted Fact, ¶ 23.

### III. CONCLUSION AND ORDER

For the reasons stated above, Callaway's motion for summary judgment is hereby granted in part and denied in part. Callaway shall have a judgment in the amount of $3,071,599.88 against Kevin and Yvette, jointly and severally.

Callaway's summary judgment motion is granted as to Kevin and this debt to Callaway in the amount of $3,071,599.88 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). The Court specifically makes no findings regarding nondischargeability under §§ 523(a)(4) or 523(a)(6).

Callaway's motion for summary judgment against Yvette is denied.

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

ENTERED this 15th day of September 2010.

/s/ Dennis R. Dow
United States Bankruptcy Judge

Copies to:
James F. B. Daniels
J. Brian Baehr